**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|                        |   |                          |
|------------------------|---|--------------------------|
| SUSAN BELL             | : |                          |
|                        | : | CIVIL ACTION NO. 13-5927 |
|            Plaintiff   | : |                          |
|     vs.                | : |                          |
|                        | : |                          |
| READING HOSPITAL       | : |                          |
|                        | : |                          |
|            Defendant   | : |                          |

_____

**<u>MEMORANDUM OPINION</u>**

**Henry S. Perkin, M.J.**                                    **January 14, 2016**

        This matter is before the Court on plaintiffs' informal letter motion to compel dated November 23, 2015 wherein plaintiffs seek assistance with four discovery issues that the parties have been unable to resolve on their own.  On December 1, 2015, defendant submitted an informal letter response, wherein it sought a protective order with respect to the discovery at issue.  Plaintiffs submitted an informal letter reply dated December 9, 2015, and defendant submitted an informal letter sur-reply dated December 11, 2015.  On January 11, 2016, the undersigned held a telephone discovery conference on the record with all counsel concerning the discovery issues expressed in these letters.

        This matter is assigned to the Honorable James Knoll Gardner.  Pursuant to Judge Gardner's Standing Order dated March 19, 2007, discovery disputes are to be resolved by the undersigned.  Having reviewed and considered the contentions of the parties, the Court is prepared to rule on this matter.

I.      Background

        This case is an opt-in collective action under the Fair Labor Standards Act, 26

U.S.C. § 216 ("FLSA").  The conditionally-certified class currently consists of twenty-five

named and opt-in plaintiffs.  The Complaint, filed on October 9, 2013, alleges that Reading

Hospital violated FLSA by failing to pay plaintiffs' wages owed for work performed during their

unpaid meal breaks.  According to the informal submissions of defendant, the plaintiffs worked

in different jobs and shifts, under different supervisors, and across approximately seventeen

departments.

II.     Discussion

        According to plaintiffs' informal submissions, plaintiffs seek production of

documents concerning the following three subject areas:

> (1) All documents defendant used to provide orientation or training
> on plaintiffs' entitlement to wages for **missed** meal breaks, and any
> procedures for requesting such wages.
>
> (2) All documents defendant used to provide orientation or training
> on plaintiffs' entitlement to wages for **interrupted** meal breaks,
> and any procedures for requesting such wages.
>
> (3) Documents regarding defendant's analysis of how frequently its
> hourly employees missed a meal break, or experienced an
> interrupted meal break relative to its roll-out of a new function at
> its Kronos electronic timeclocks that required employees to "attest"
> whether they had received an "uninterrupted scheduled meal
> break" during their shift.

Finally, plaintiffs seek to require defendant to present a designee (pursuant to Rule 30(b)(6) of

the Federal Rules of Civil Procedure) to provide department level information (as opposed to

"general hospital" information) concerning fifteen topics identified in their designee deposition

notice.

Defendant has opposed the forgoing discovery requests, and seeks a protective order with respect to same, by alleging that the information requested is overly broad and burdensome.  More specifically, with respect to the designee deposition in particular, defendant avers that a protective order is appropriate because it will be required to consult with, prepare and potentially produce thirty-five current and former supervisors across seventeen departments to provide information on twenty-five plaintiffs in approximately fourteen jobs.  Defendant further asserts that the discovery sought by plaintiffs is outside of the scope of proportional discovery in this case.

Rule 26 of the Federal Rules of Civil Procedure, requires that discovery be limited to any non-privileged matter that is :

> relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  It is this Court's understanding that proportionality determinations are to be made on a case-by-case basis using the factors listed in Rule 26(b)(1), and that no single factor is designed to outweigh the other factors in determining whether the discovery sought is proportional.

In considering the proportionality factors noted above, this Court is also mindful that in order to advance their claims collectively, plaintiffs are required to move for final

certification of the FLSA class pursuant to 29 U.S.C. § 216 (b).  The Third Circuit has embraced a two-step approach to certification of an FLSA collective action.  Jarosz v. St. Mary Medical Center, 2014 WL 4722614, *7 (E.D. Pa. Sept. 22, 2014) (McLaughlin, J.) (citing Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536-537 (3d Cir.2012).  In the first step, the district court applies a fairly lenient standard for conditional certification that requires only substantial allegations that the members of the collective action were victims of a single decision, policy, or plan.  Id.

A stricter standard, however, applies with respect to final certification.  To certify an FLSA collective action for trial, a district court must make a finding of fact that the members of the collective action are similarly situated.  Id.  A plaintiff bears the burden of proving the opt-in plaintiffs are similarly situated by a preponderance of the evidence.  Id.  To determine whether the members of the collective action are similarly situated, the court should consider all of the relevant factors and make a factual determination on a case-by-case basis.  Id.  Relevant factors include:

> whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment. Plaintiffs may also be found dissimilar based on the existence of individualized defenses.

Id.

For all the reasons advanced by counsel for plaintiffs in his letter submissions to the undersigned, and based on the argument of plaintiffs' counsel during the telephone discovery conference of January 11, 2016, we conclude that the discovery plaintiffs currently seek is relevant, appropriate, and proportional.  In making this determination, we note that while

discovery in general is usually considered to be a burden, we conclude that the current discovery requests of the plaintiffs will tend to advance the issues raised by them in this matter.

More specifically, as noted by plaintiffs in their informal submissions, several courts in this Circuit have considered department-specific facts developed through discovery in assessing whether "the opt-in plaintiffs are similarly situated by a preponderance of the evidence."  See Jarosz v. St. Mary Med. Ctr., 2014 U.S. Dist. Lexis 133218, *5-15, *18-23 (E.D. Pa. Sept. 22, 2014); Martin v. Citizens Fin. Group, Inc., 2013 U.S. Dist. Lexis 43084, *2-6, *11-18 (E.D. Pa. Mar. 27, 2013) ("decisions to deny overtime were made independently, by either separate branch or regional managers"); Zanes v. Flagship Resort Dev., LLC, 2012 U.S. Dist. Lexis 22191, *2-4, *11-13 (D.N.J. Feb. 22, 2012) ("Although differences between the Plaintiffs in the travel club and front-line departments exist, any such differences are outweighed by the similarities"); Camesi v. Univ. of Pitt. Med. Ctr., 2011 U.S. Dist. Lexis 146067, *3-10, *17-27 (W.D. Pa. Dec. 20, 2011) (discussing differences between how meal break work was reported, tracked, and paid on a department-level basis); Aquilino v. Home Depot U.S.A., Inc., 2011 U.S. Dist. Lexis 15759, *5-14, *19-25 (D.N.J. Feb. 15, 2011) (the class members' "duties and responsibilities significantly varied from [person] to [person]" and store to store).

Moreover, we note that defendant previously sought and received leave to send a written questionnaire to 122 opt-in plaintiffs seeking information on several topics, including many specifically directed to department-level meal break issues such as: what they were told about seeking pay for meal break work, and who gave them this information, why they worked during meal breaks, how they recorded meal break work time, who else knew about their meal break work and how they got this knowledge, whether they asked for meal break pay, how they

asked for meal break pay, whether they complained about meal break work or pay issues, and the responses to their complaints.  The questionnaire also included document requests relating to meal break work or pay, including: schedules, calendars, diaries, journals, notes, correspondence, and "any documents… that refer or relate to information that you were given about working during meal breaks and what to do about reporting that work time."  Defendant has also received leave to depose ten of the remaining 25 opt-in plaintiffs in this matter.  The Court has been advised that this deposition time has included testimony on department-specific and supervisor-specific meal break issues.  In addition, we note that during argument on the record, counsel for defendant advised the Court that it was not contending that the discovery sought by plaintiffs was not relevant.  Accordingly, we find that plaintiffs' discovery requests are both relevant and appropriate in this matter.

With respect to proportionality, we conclude that any burden required for defendant to provide the discovery at issue is not unfairly disproportionate in light of the factors enumerated.  More specifically, as noted by the cases cited above, the type of information sought by plaintiffs has been considered by other courts in determining whether plaintiffs are similarly situated.  Accordingly, this information is important to the issues at stake in this matter, including whether final certification of the class is appropriate, and plaintiffs should not be deprived of a fair opportunity to develop and present its case.  This factor, therefore, weighs in favor of allowing the discovery at issue.

This Court has also considered the amount in controversy in this matter.  During the argument on the record, plaintiffs' counsel indicated that the amount of controversy in this matter ranges from $5,000 to $10,000 for each of the opt-in plaintiffs.  Counsel represented that

6

this amount did not include attorney fees and costs, or liquidated damages under the FLSA.  It appears that the discovery conducted to date, as well as the discovery requests currently at issue, would certainly not exceed the amount of controversy in this matter.  As such, we find that this factor also weighs in favor of allowing the discovery at issue.

Taking into consideration the parties resources, and relative access to information, we again conclude that this factor weighs in favor of allowing the requested discovery.  In a case such as this, it is expected that defendant would have larger amounts of discoverable information, as opposed to the individual plaintiffs.  It further appears that defendant has more resources as opposed to the plaintiffs.  Accordingly, it is not unreasonable that the defendant would shoulder more of the discovery obligation in this matter.  There is no requirement that parties have to spend equal amounts on discovery, or that a party who has less to produce be somehow limited in what it can request as a result.  Further, it does not appear to this Court that plaintiffs intent in seeking this discovery is to raise the discovery costs of the defendant.  Rather, as mentioned above, it is clear to the Court that the current requests are appropriate in light of the issue of final certification.

Finally, this Court finds that whatever burden will come of having to respond to the current discovery requests, any burden would be outweighed by the benefit of resolving litigation issues in this matter.  Again, as demonstrated by the foregoing case law, the requested discovery bears directly on the issue of final certification.  Defendant has argued that if this discovery is permitted, it will have to canvass employees from seventeen different departments, and thirty-five different supervisors, to provide the requested discovery.  It appears to this Court, however, that all of these departments are located in one place, and not spread out across

multiple states or cities.  Moreover, defendant has not provided any basis for this Court to conclude that the employees and/or supervisors in these seventeen departments cannot be canvassed to secure the requested information quickly and efficiently, by e-mail for example. Further, defendant has represented to defendant, and this Court, that it intends to introduce declarations from an unspecified number of these supervisors (possibly no more than ten) to oppose plaintiffs' final certification motion.  Again, we find the requested discovery to be relevant, and not unduly burdensome or disproportionate.  Based on the foregoing, we find that there is no basis to conclude that plaintiffs' pending discovery requests pose a burden so unfairly "disproportionate" as to require a protective order.

IV.    Conclusion

      For the foregoing reasons, and for the reasons submitted by plaintiffs in their informal letter submissions and argument before the Court on January 11, 2016, we grant plaintiffs' informal letter motion and deny defendant's request for a protective order.

      An appropriate order follows.