IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Susan Bell,                        )
on her own behalf                  )
 and for all others                )
 similarly situated                )        Civil Action
                                   )        No. 13-cv-05927
                Plaintiffs         )
                                   )
        v.                         )
                                   )
THE READING HOSPITAL AND           )
MEDICAL CENTER                     )
                                   )
                Defendant          )

                    *      *      *


APPEARANCES:

            DAVID J. COHEN, ESQUIRE
                 *On behalf of Plaintiffs*

            ELIZABETH A. MALLOY, ESQUIRE
            JEFFREY FRANCIS KLAMUT, ESQUIRE
                 *On behalf of Defendant*

                    *      *      *

JAMES KNOLL GARDNER
United States District Judge

                    O P I N I O N

        This matter is before the court on Defendant Reading

Hospital's Motion to Decertify the Conditionally Certified

Collective Action filed April 25, 2016 ("Motion to Decertify").[1]

The motion was filed together with Defendant Reading Hospital's

---
        [1]        Document 102.

Brief in Support of its Motion to Decertify the Conditionally Certified Collective Action[2] and Defendant's Statement of Facts.[3]

For the reasons that follow, I grant defendant's Motion to Decertify and decertify this conditionally-certified collective action class.  Accordingly, this case will proceed with only the named plaintiff Susan Bell.  See Lugo v. Farmers Pride, Inc., 737 F.Supp.2d 291, 299 (E.D.Pa. Aug. 25, 2010) (Baylson, J.).

<u>PROCEDURAL HISTORY</u>

On October 9, 2013, plaintiffs initiated this action by filing a Collective Action Complaint ("Complaint").[4] The named plaintiffs were Amanda Neifert and Evelyn Santoro.[5]  By Stipulation to Substitute Named Plaintiff, Amend Caption and Voluntarily Dismiss Certain Named Plaintiffs' Claims, which was approved and signed by me on December 11, 2014 and filed December 12, 2014,[6] the named plaintiffs were substituted with Susan Bell, and their claims against defendant were dismissed.

By Stipulation and Order to Conditionally Certify Collective Action Class signed by me on June 27, 2014 and filed

---

[2]     Document 102-1.

[3]     Document 102-2 ("DSOF").

[4]     Document 1.

[5]     Id.

[6]     Document 50.

June 30, 2014 ("Collective Action Stipulation"),[7] the parties agreed to conditionally certify the following opt-in collective action class:

> All employees who held the position of Registered Nurse or Surgical Technician [at Reading Hospital] between July 1, 2011 and June 15, 2014 who have worked FTE (Full Time Equivalent) schedules of .8 (32 hours of a 40-hour workweek) or more on a non-exempt, hourly basis.

The parties further stipulated that the following employees would be exempt from the class: "[s]alaried employees, such as administrative, managerial and professional employees, who are exempt from the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219".[8]

On September 9, 2014, plaintiffs filed a Notice of Filing Opt-In Consent Forms Pursuant to 29 U.S.C. § 216(b),[9] together with Exhibits A through I,[10] which included the opt-in consent forms of 117 class members.  On September 15, 2014, plaintiffs filed a Second Notice of Filing Opt-In Consent Forms Pursuant to 29 U.S.C. § 216(b),[11] together with Exhibit A,[12] which

---

[7]    Document 31.

[8]    See id. at page 2 n.1.

[9]    Document 36.

[10]   Documents 36-1 through 36-9.

[11]   Document 37.

[12]   Document 37-1.

included the opt-in consent forms of an additional two class
members.  On November 13, 2014, plaintiffs filed Third Notice of
Filing Opt-In Consent Forms Pursuant to 29 U.S.C. § 216(b),[13]
together with Exhibit A,[14] which included the opt-in consent
forms of another two class members.  At that point, there were a
total of 121 class members.

By Joint Stipulation of Dismissal Pursuant to
Rule 41(a)(1)(A)(ii) signed by me on September 23, 2015 and
filed on September 24, 2015,[15] ninety-seven class members were
dismissed from the action because of their failure to respond to
questionnaires, which left twenty-four class members remaining.[16]

By Order dated December 2, 2015 and filed December 4,
2015,[17] I granted the parties' stipulation to dismiss opt-in
plaintiff Deborah Ziemba from the action.  By Order dated and
filed March 3, 2016,[18] I granted the parties' stipulation to
dismiss opt-in plaintiff Roxana Van Ostran from the action.

---

[13]    Document 46.

[14]    Document 46-1.

[15]    Document 66.

[16]    On October 9, 2015, plaintiffs filed Plaintiff's Motion to
Reinstate Claim of Brigette Quintinsky (Document 70), which I denied by Order
dated and filed March 3, 2016 (Document 91).

[17]    Document 77.

[18]    Document 90.

Accordingly, the following 22 opt-in class members remained in the case:

- Susan Bell (named plaintiff)
- Charles Brennan
- Gisett Carranza
- Nancy Dombrosky
- Kathy Frankfort
- Ashleigh Grebill
- Ashley Jobes
- Beth Ann Mack
- Rebecca Ann Malfaro
- Dorothy Pfeffer
- Pamela Pikhtomikoff
- Angelo Rivera
- Jacqueline Rutkowski-Murgia
- Jamee Smith
- Sally Snyder
- Melissa Spang
- Rita Spatz
- Catherine Straka-Jones
- Susan Sunday
- Jessica Sweitzer
- Beth Vanselous
- Janice Zebert

On April 25, 2016, defendant filed its Motion to Decertify together with Defendant Reading Hospital's Brief in Support of its Motion to Decertify the Conditionally Certified Collective Action[19] and Defendant's Statement of Facts.[20]

On May 20, 2016, plaintiffs filed Plaintiffs' Response to Defendant's Statement of Facts and Plaintiffs' Affirmative

---

[19]    Document 102-1.

[20]    Document 102-2.

Statement of Facts together in one document ("Plaintiffs' Statement of Facts").[21]  On May 24, 2016, plaintiffs filed Plaintiffs' Opposition to Defendant's Motion to Decertify[22] together with Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Decertify ("Plaintiffs' Response").[23]

On May 26, 2016, defendant filed Defendant's Response to Plaintiffs' Affirmative Statement of Facts.[24]  On June 9, 2016, Defendant's Reply to Plaintiff's Response to Defendant's Motion to Decertify the Conditionally Certified Collective Action ("Defendant's Reply")[25] was filed pursuant to my Order dated and filed June 2, 2016[26] granting leave to file the reply brief.

On June 16, 2016, a hearing was conducted on the Motion to Decertify.  At the hearing, plaintiffs presented no witnesses and defendant presented six witnesses: Tracy Adami, Maryellen Alderfer, Julie Schlappich, Christi Pelko, Karen Niewood, and Lisa Naugle.  By stipulation of the parties, the court entered into evidence all of the documents listed in the

---

[21]    Document 108 (collectively "PSOF").

[22]    Document 109.

[23]    Document 109-1.

[24]    Document 110.

[25]    Document 113.

[26]    Document 112.

Updated Joint Appendix,[27] which was filed with Plaintiff's Statement of Facts.[28]   Defendant also moved into evidence Defendant's Exhibits QQ, RR, SS, and TT.  The parties further stipulated to paragraphs 38, 187, 201, 212, 222, 236, 251, and 276 of Defendant's Statement of Facts for purposes of the hearing.  Closing arguments occurred on June 23, 2016.

### JURISDICTION

The court has subject matter jurisdiction over this matter pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") which authorizes suit in "any Federal or State court of competent jurisdiction" and pursuant to 28 U.S.C. § 1331 based upon a federal question.

### VENUE

Venue is proper because the events giving rise to this cause of action occurred in Reading, Berks County, Pennsylvania, which is within this judicial district.  See 28 U.S.C. §§ 118(a), 1391(b)(2).

### FINDINGS OF FACT

Based upon the pleadings, exhibits, deposition testimony, proposed findings of fact and stipulations of the parties, testimony of the witnesses, and credibility

---

[27]    Document 108-1.

[28]    Document 108.  The exhibits appear as Documents 102-5 to 102-33 and 108-2 to 108-15 and are identified as Exhibits A through Z and AA through PP.

determinations made by me pursuant to Federal Rules of Civil Procedure 52(a) and (c), I make the following findings of fact.

      1.  Defendant Reading Hospital and Medical Center ("Reading") is a non-profit, comprehensive medical center with multiple facilities located primarily in West Reading, Pennsylvania.[29]

      2.  Plaintiffs were each employed by Reading as a Registered Nurse ("RN") or surgical technician at some point between July 1, 2011 and the present.

      3.  Reading is divided into various departments, which vary in location, size, hours of operation, and staffing.[30]

      4.  Reading's various departments use different systems for meal break coverage.[31]

      5.  From July 1, 2011 to the present, the opt-in plaintiffs in this case have worked in 14 different departments for 32 different supervisors during the time they fell within the confines of the conditional class.[32]

---

[29]    Defendant's Statement of Facts ("DSOF") at ¶ 1; Plaintiffs' Statement of Facts ("PSOF") at ¶ 1.

[30]    DSOF at ¶¶ 40-44; PSOF at ¶¶ 40-44.

[31]    DSOF at ¶ 46; PSOF at ¶ 46; Motion to Decertify, Exhibit 0 at pages 55, 62.

[32]    Motion to Decertify, Exhibit I ¶ 30 & Exhibit I(7).  Although the Declaration of Byron Shinkle avers that plaintiffs worked in sixteen different departments, the chart appended as Exhibit 7 to his declaration presents only fourteen different departments in which plaintiffs worked while employed as either RNs or surgical technicians with full-time or FTE schedules, which are the definitive features of the conditional class. Compare Exhibit I at ¶ 30, with Exhibit I(7).

6.    The lengths and hours of the plaintiffs' shifts varied.[33]

7.    The job duties of each plaintiff also varied.[34]

8.    In 2009, Reading began using an electronic timekeeping system called Kronos.[35]

9.    Reading's formal policies require all employees who are not exempt from the FLSA's overtime provisions to swipe their timecards using Kronos at the beginning and end of each shift.[36]

10.   Employees who work at least five-and-a-half hours are eligible to take a 30-minute uninterrupted meal break.[37]

11.   Employees are not always able to take a 30-minute uninterrupted meal break, however, for reasons that differ among departments, job duties, and shifts, including staffing and patient acuity.[38]  The frequency with which employees experience missed or interrupted breaks also varies.[39]

---

[33]    See Motion to Decertify, Exhibits S through Z.

[34]    See id., Exhibits S through Z.

[35]    See DSOF at ¶ 5; PSOF at ¶ 5; Transcript of Motion Hearing Before the Honorable James Knoll Gardner[,] United States District Court Judge (June 16, 2016) ("Transcript") at page 58.

[36]    DSOF at ¶ 5; PSOF at ¶ 5.  I will use the term "employees" to refer to all employees not exempt from the FLSA unless explicitly stated otherwise.

[37]    See Motion to Decertify, Exhibit I(1).

[38]    Acuity refers to the severity of a patient's medical condition.

[39]    See Motion to Decertify, Exhibits L through Z.

12.   Between 2009 and November 3, 2014, the Kronos system would automatically deduct a 30-minute unpaid meal break from the pay of employees who worked for more than five-and-a-half hours.[40]

13.   It was possible, however, for supervisors[41] with access to the Kronos timesheets to override the automatic meal break deduction.[42]

14.   Between 2009 and November 2014, Reading had no institutional policy for cancelling meal breaks; each department was permitted to devise its own methods.[43]

15.   Reading provides training to supervisors on Kronos, including how to cancel automatic meal break deductions.[44]

16.   Approximately every other month, Reading's payroll department conducts "user group meetings", to which all

---

[40]    DSOF at ¶ 6; PSOF at ¶ 6; Motion to Decertify, Exhibit L at page 24; Transcript at pages 58, 97.

[41]    Where I use the term "supervisors", I refer to any individual who, regardless of his or her title (e.g., nurse manager, timekeeper, department head, etc.), was responsible for confirming the accuracy of timesheets and either overriding automatic meal deductions or reviewing the attestations of employees indicating that they missed a meal break.

[42]    See, e.g., Motion to Decertify, Exhibit I ¶ 21; Exhibit L at page 73; Exhibit R at pages 144-145; Transcript at page 58.

[43]    Motion to Decertify, Exhibit I ¶ 21; Exhibit O at page 53; Exhibit R at pages 107-111.

[44]    Motion to Decertify, Exhibit I ¶ 24; Transcript at pages 59, 99.

"Kronos super users" (individuals deemed experts at using the Kronos system) are invited.[45]

17.  At the user group meetings, payroll department personnel provide training on Reading's formal policies and the Kronos system, including Reading's policy to compensate employees who experience missed or interrupted meal breaks.[46]

18.  Meeting minutes are distributed to all "Kronos users" after user group meetings.  Kronos users are nurse managers, division directors, timekeepers, and anyone else with a timekeeper or manager license.[47]

19.  Reading's Recording of Time Policy dated August 1, 2010 states that it is Reading's policy "to establish and maintain 'hours of work' which are compatible with Federal and State law".[48]

20.  Reading's Recording of Time Policy dated August 1, 2010 and revised July 1, 2012 and May 10, 2013 prohibits and prescribes discipline if an employee "Fails to Record Time" using Kronos.[49]

---

[45]    Transcript at pages 59, 60, 64, 82, 154.

[46]    Id. at pages 59-64, 68, 82, 90, 98, 125, 139; Defendant's Exhibits QQ & RR; DSOF at ¶ 29; PSOF at ¶ 29.

[47]    Transcript at pages 60, 65, 67, 98, 99, 155.

[48]    Motion to Decertify, Exhibit I(1).

[49]    DOSF at ¶ 22; Motion to Decertify, Exhibits I(2), I(3); PSOF at ¶ 22.

21.   Reading's Recording of Time and Hours of Work policies are distributed to employees.[50]

22.   Reading provides new hires with general orientation, including timekeeping policies.[51]

23.   Employees are also oriented at the departmental level, including hours of work and meal break policies and the procedure to follow to have the automatic meal break deduction cancelled.[52]

24.   Employees receive varying types and degrees of training on the procedures for having an automatic meal break deduction cancelled depending on their supervisor and the department in which they work.

25.   Departmental training regarding meal breaks and methods of having meal break deductions cancelled occurs in many different settings, including departmental orientation, staff meetings, meeting with a preceptor or educator, "huddles",

---

[50]     DSOF at ¶ 26; PSOF at ¶ 26.

[51]     Motion to Decertify, Exhibit I ¶ 27; Exhibit L at pages 54, 55, 60; Exhibit N at page 45; Exhibit O at page 72; Exhibit P at page 39; Exhibit R at pages 32, 33, 87, 88; Exhibit S at pages 124, 127; Exhibit T at page 15; Exhibit V at page 25; Exhibit W at page 36; Exhibit Y at page 52.

[52]     See DSOF at ¶ 28; PSOF at ¶ 28; Motion to Decertify, Exhibit L at pages 29, 54, 58; Exhibit M at pages 42, page 57, 60, 85, 87; Exhibit N at page 68; Exhibit O at page 68; Exhibit P at pages 39, 46, 47; Exhibit Q at page 45; Exhibit R at pages 33, 49, 40, 60, 70, 76; Exhibit S at pages 86, 129; Exhibit T at pages 16, 17; Exhibit U at pages 44, 71; Exhibit W at pages 36, 37; Transcript at pages 98, 163.

informal interpersonal or group conversations, e-mails, and by word-of-mouth from employee to employee.[53]

26.   The information conveyed varies by department, but employees are generally aware that they are entitled to be compensated for both missed and interrupted meal breaks.[54]

27.   However, plaintiffs claim they were not aware that they could be compensated for interrupted, rather than fully missed, meal breaks, particularly prior to November 2014.[55]

28.   The methods adopted for reporting missed or interrupted meal breaks differed by department and supervisor, and included in-person notification, e-mail, written notice,

---

[53]       Motion to Decertify, Exhibit B ¶ 10; Exhibit C ¶ 13; Exhibit D ¶ 13; Exhibit E ¶ 8; Exhibit F ¶¶ 6-7; Exhibit G ¶ 17; Exhibit H ¶ 10; Exhibit J ¶ 14; Exhibit L at pages 31, 56, 57, 64, 65; Exhibit M at pages 57, 66, 84-86, 96-99, 139-141; Exhibit N at pages 26, 36, 67, 75, 77, 78, 87; Exhibit O at pages 63, 76-78, 81, 82, 90, 91, 93, 100, 101, 128; Exhibit P at page 39; Exhibit Q at pages 46, 47, 50, 54, 60, 61, 65, 77; Exhibit R at pages 33, 34, 50, 59, 62, 74, 76, 86, 118, 123; Exhibit S at page 131; Exhibit T at pages 36, 37, 44; Exhibit U at pages 44, 57; Exhibit W at page 38; Exhibit X at pages 42, 43, 77, 123; Exhibit Y at pages 54-55, 85; Exhibit Z at pages 74, 75; Transcript at pages 77-78, 91, 97, 111, 116, 132, 133, 145, 146, 159-161, 163.

[54]       Motion to Decertify, Exhibit B ¶ 12; Exhibit C ¶ 11; Exhibit D ¶ 11; Exhibit F ¶ 11; Exhibit H ¶ 12; Exhibit K ¶ 11; Exhibit L at pages 48, 49, 54, 64, 76, 77; Exhibit M at pages 59, 144-146, 154, 173, 174; Exhibit N at pages 82-84, 87, 88; Exhibit O at pages 87, 90-92, 104-106, 177, 193-195, 198, 199; Exhibit P at pages 44, 48, 49, 86; Exhibit Q at pages 50-52, 57, 63-65, 68, 78, 119; Exhibit R at pages 81, 83, 84, 120-122; Exhibit X at pages 42-44; Transcript at pages 77, 78, 104, 111, 127, 148, 149, 156, 163. Cf. Motion to Decertify, Exhibit S at pages 120, 121, 137; Exhibit U at pages 54, 55; Exhibit Y at pages 65, 66.

[55]       See Motion to Decertify, Exhibit S at pages 88, 89, 92, 117, 143; Exhibit U at pages 26, 42, 55, 81; Exhibit V at pages 41, 53, 64, 69; Exhibit W at page 48; Exhibit X at page 42; Exhibit Y at pages 74, 91, 104-106, 108.

notations made in a specified log, and written notification on a white board.[56]

      29.  On November 3, 2014, Reading adopted an update to Kronos referred to as the attestation system, whereby upon clocking out, an employee is prompted to indicate whether or not the employee received a full 30-minute uninterrupted meal break, which includes both missed and interrupted breaks.[57]

      30.  If an employee indicates through the attestation system that he or she did not receive a full meal break, an e-mail is sent to the employee's supervisor, and the meal deduction is cancelled.[58]

---

[56]    Motion to Decertify, Exhibit A ¶ 13; Exhibit C ¶ 11; Exhibit D ¶ 11; Exhibit E ¶ 12; Exhibit F ¶ 11; Exhibit G ¶ 15; Exhibit H ¶ 10; Exhibit J ¶ 10; Exhibit K ¶ 8; Exhibit L at pages 51, 52, 54, 69, 71; Exhibit M at pages 53, 54, 138; Exhibit N at pages 69, 76, 104; Exhibit O at page 83; Exhibit P at page 45; Exhibit Q at page 65; Exhibit R at pages 40, 60, 62, 77, 118; Exhibit S at page 84; Exhibit T at page 37; Exhibit U at pages 23, 40, 44, 70; Exhibit V at pages 30, 63; Exhibit W at pages 38, 56, 87; Exhibit X at pages 92, 93; Exhibit Y at pages 54, 58, 85; Exhibit Z at pages 36, 55, 68; Exhibit CC at pages 4, 5; Exhibit GG at pages 3, 5, 6; Exhibit HH at pages 4-6; Exhibit II at pages 4-6; Exhibit JJ at pages 4, 5; Exhibit KK at page 3; Transcript at pages 79-80, 82, 97, 103, 111, 115, 132, 133, 149, 156, 160.

[57]    Motion to Decertify, Exhibit B ¶ 13; Exhibit C ¶ 12; Exhibit D ¶ 12; Exhibit F ¶ 12; Exhibit K ¶ 8; Exhibit Q at pages 68, 69; Exhibit Q at page 99; Exhibit R at pages 54, 112 138-139; Exhibit S at pages 83, 84; Exhibit X at pages 41, 42, 79.

[58]    See Motion to Decertify, Exhibit O at pages 127, 176, 177; Exhibit Q at page 117; Exhibit R at page 142; Exhibit S at page 138; Exhibit X at 80, 98, 133; Transcript at pages 101, 102, 112, 126, 140.

31.   Some departments still maintain a system of reporting missed or interrupted meal breaks in some fashion in addition to the attestation system.[59]

32.   Reading provided institutional training to employees regarding the attestation system[60] when it was adopted, and some departmental training also occurred.[61]

33.   Between June 26, 2011 and September 8, 2015, the opt-in plaintiffs had a total of 1,318 cancelled automatic meal break deductions.[62]

34.   Each of the 22 opt-in plaintiffs requested meal deduction cancellations, ranging from a minimum of 8 times and a maximum of 252 times.[63]

---

[59]      Motion to Decertify, Exhibit B ¶ 13; Exhibit D ¶ 12; Exhibit J ¶ 11; Exhibit M at pages 52, 57; Exhibit P at pages 45, 46; Exhibit Q at pages 69, 73, 74, 78; Exhibit S at pages 83, 146; Exhibit X at pages 92, 97, 133.

[60]      DSOF at ¶ 31; PSOF at ¶ 31; Motion to Decertify, Exhibit F ¶ 13; Exhibit I ¶ 24; Exhibit M at pages 144, 145; Exhibit O at page 95; Exhibit P at page 47; Exhibit Q at pages 71, 101; Exhibit R at page 57; Exhibit T at page 55; Exhibit U at pages 54, 55, 71; Exhibit Y at pages 106-107; Exhibit Z at page 72.

[61]      Motion to Decertify, Exhibit F ¶ 13; Exhibit P at pages 55, 80, 81, 84, 85; Exhibit Q at pages 69, 71, 73, 101; Exhibit R at pages 139, 140; Exhibit T at pages 55, 56; Exhibit V at pages 34-35, 52-53; Exhibit X at pages 82, 83; Transcript at page 122.

[62]      DSOF at ¶ 38; PSOF at ¶ 38; Motion to Decertify, Exhibit AA, Appendix A; Exhibit L at pages 69, 74; Exhibit N at page 74; Exhibit O at pages 207-209; Exhibit P at pages 94, 95; Exhibit Q at pages 118, 121, 123, Exhibit R at pages 139, 140, 179.

[63]      See Motion to Decertify, Exhibit AA, Appendix A; Exhibit R at page 179; Exhibit W at pages 94-96; Transcript at page 88.

35.   Some of the meal break cancellations were made for interrupted, rather than fully missed, meal breaks.[64]

36.   Nonetheless, some plaintiffs claim that they were not compensated for all missed or interrupted meal breaks because they failed to report all of them.[65]  Whenever they reported a missed or interrupted break, they were compensated for it.

37.   Reading did not have a formal policy or systematic practice of instructing supervisors to discourage employees from seeking pay for missed or interrupted meal breaks.[66]

38.   Reading also did not have any formal policy or systematic practice requiring supervisors to discipline employees seeking pay for missed or interrupted meal breaks.[67]

39.   Nonetheless, plaintiffs claim that they felt discouraged by specific supervisors from requesting pay for

---

[64]    Transcript at pages 133, 134, 139, 147; Defendant's Exhibit TT.

[65]    See Motion to Decertify, Exhibit S at pages 87, 98, 99, 101, 102, 143; Exhibit T at page 54; Exhibit U at pages 35, 36, 47, 48, 50, 82, 83; Exhibit V at page 66; Exhibit W at page 9; Exhibit X at pages 42, 96, 135, 136, 138; Exhibit Y at pages 59, 11; Exhibit Z at pages 55-58, 88; Exhibit DD at page 4.

[66]    See Motion to Decertify, Exhibit B ¶ 15; Exhibit C ¶ 15; Exhibit D ¶¶ 14-15; Exhibit E ¶ 13; Exhibit F ¶ 14; Exhibit G ¶ 18; Exhibit H ¶ 13-14; Exhibit J ¶ 17; Exhibit K ¶ 12; Exhibit R at page 137; Transcript at pages 82, 83, 100, 113, 141, 158.

[67]    Transcript at pages 84, 113, 141, 158.

missed or interrupted meal breaks or worried they would be disciplined for doing so.[68]

40.   However, none of the opt-in plaintiffs were actually disciplined for requesting pay for a missed or interrupted meal break.[69]

41.   Sometimes, supervisors would question employees about their missed or interrupted meal break, generally only to ensure that the employee had the resources he or she needed.[70]

42.   Nonetheless, some employees felt that their supervisors were questioning their time management.[71]

<u>STANDARD OF REVIEW</u>

Collective action cases under the FLSA follow a "two-tier approach".  <u>See</u> <u>Zavala v. Wal Mart Stores, Inc.</u>, 691 F.3d 527, 536 (3d Cir. 2012); <u>Lugo</u>, 737 F.Supp.2d at 299; <u>Kuznyetsov v. West Penn Allegheny Health System, Inc.</u>, Civil Action No. 10-00948, 2011 WL 6372852 at *2-*3 (W.D.Pa. Dec. 20, 2011).  First, the court applies a "fairly lenient

---

[68]   <u>See</u> Motion to Decertify, Exhibit R at page 136; Exhibit S at pages 99, 135-137, 140, 141, 153; Exhibit T at pages 37-39, 44-47, 60, 64, 84; Exhibit U at pages 44, 45, 58, 83, 90; Exhibit V at pages 28-30, 42-43, 58, 63; Exhibit X at page 97; Exhibit Y at pages 62, 109, 110; Exhibit Z at page 88; Exhibit GG at page 3; Exhibit PP at page 5.

[69]   <u>See</u> Motion to Decertify, Exhibit S at page 153; Exhibit T at pages 61-62; Exhibit U at page 59; Exhibit V at page 57.  <u>Cf.</u> Transcript at pages 102, 113, 141, 158.

[70]   Motion to Decertify, Exhibit H ¶ 13; Exhibit S at page 138; Transcript at pages 83, 140, 141.  <u>Cf.</u> Motion to Decertify, Exhibit Z at pages 64, 89; Transcript at page 102.

[71]   Motion to Decertify, Exhibit S at page 139; Exhibit U at pages 57-59; Exhibit Y at page 61.

standard" in defining a conditional class.  Zavala, 691 F.3d at 535; see also Camesi v. University of Pittsburgh Medical Center, Civil Action No. 09-85J, 2011 WL 6372873 at *1 (W.D.Pa. Dec. 20, 2011); Lugo, 737 F. Supp.2d at 299; Kuznyetsov, 2011 WL 6372852 at *1-*2.

Second, after evidence is obtained through discovery, the court rules upon final certification by employing a more stringent standard to determine whether the class members are "similarly situated".  Zavala, 691 F.3d at 536; Camesi, 2011 WL 6372873 at *3; Lugo, 737 F.Supp.2d at 299; Kuznyetsov, 2011 WL 6372852 at *3.

Final certification of a collective action class under the FLSA can result from granting a motion for final certification, denying a motion for decertification, or both. See Martin v. Citizens Financial Group, Inc., No. 10-cv-00260, 2013 WL 1234081, at *2 (E.D.Pa. March 27, 2013) (Goldberg, J.); Garcia v. Nunn, No. 13-cv-06316, 2016 WL 1169560, at *2 (E.D.Pa. March 25, 2016) (Stengel, J.).

Regardless of the party who raises the final certification issue, plaintiffs bear the burden to show by a preponderance of the evidence their entitlement to final certification.  See Jarosz v. St. Mary Medical Center, Civil Action No. 10-cv-03330, 2014 WL 4722614, at *7

(E.D.Pa. Sept. 22, 2014) (McLaughlin, SJ); <u>Martin</u>,
2013 WL 1234081, at *2 (citing <u>Zavala</u>, 691 F.3d at 537).

      In determining final certification, the court must
engage in "a specific factual analysis of each employee's claim
to ensure that each proposed plaintiff is an appropriate member
of the collective action." <u>Martin</u>, 2013 WL 1234081 at *2
(quoting <u>Lugo</u>, 737 F.Supp.2d at 299) (internal quotation marks
omitted).

      At the outset, the opt-in plaintiffs "should have been
impacted by a common employer practice that, if proved, would
help demonstrate a violation of the FLSA." <u>Jarosz</u>, 2014 WL
4722614 at *7.

      Next, to determine whether the plaintiffs are
similarly situated, the relevant factors to consider fall into
three main categories: "(1) disparate factual and employment
settings of the individual plaintiffs; (2) the various defenses
available to defendant that appear to be individual to each
plaintiff; and (3) fairness and procedural considerations."
<u>Camesi</u>, 2011 WL 6372873 at *3.

      In considering these elements, specific factors to
consider include:

> whether the plaintiffs are employed in the same
> corporate department, division, and location;
> whether they advance similar claims; whether
> they seek substantially the same form of
> relief; and whether they have similar salaries

and circumstances of employment. Plaintiffs may
also be found dissimilar based on the existence
of individualized defenses.

Zavala, 691 F.3d at 536-537.

SUMMARY OF CLAIMS

Contentions of Plaintiffs

Plaintiff Susan Bell brings this putative collective
action under the Fair Labor Standards Act, which requires
employers to compensate non-exempt employees at a minimum wage
for all hours worked, and for overtime "at a rate not less than
one and one-half times [his or her] regular rate" for hours
worked in excess of forty hours per week.  29 U.S.C. §§ 201,
206, 207; see also 29 C.F.R. §§ 785.11-785.13.  The FLSA creates
a civil right of action, including opt-in collective actions.
29 U.S.C. § 216(b).  Plaintiffs here seek compensatory damages
(i.e. unpaid wages), interest, and attorney's fees.[72]

At all relevant times, defendant Reading utilized an
electronic timekeeping system called Kronos for hourly
employees.  Between 2009 and November 2014, Kronos would
automatically deduct 30 minutes of pay based on the eligibility
for a 30-minute meal break for employees who worked more than
five and a half hours.  In November 2014, defendant Reading
adopted an update to Kronos referred to as the "attestation"
feature.  The attestation feature requires employees to attest

---

[72]    See Complaint (Document 1).

to whether or not they had received a 30-minute uninterrupted break when they clock out at the end of their shift.

Plaintiffs allege that prior to November 2014, they were not instructed or trained that they could request compensation for meal breaks that were interrupted as opposed to fully missed.  They further allege that they were discouraged from requesting compensation for missed or interrupted meal breaks, particularly after November 2014.

### Defendant's Contentions

Defendant contends that plaintiffs have failed to establish that the members of the putative class are similarly-situated.  As a preliminary matter, defendant argues that plaintiffs have identified no common policy or policy-to-violate-the-policy.

Defendant also contends that the circumstances of plaintiffs' employment were different.  Among the distinctions emphasized by defendant are the variety of departments, supervisors, job duties, and schedules of each plaintiff. Defendant also highlights the differences between plaintiffs with respect to meal breaks, including the availability of meal break coverage, the frequency with which meal breaks were missed or interrupted, the methods for reporting missed or interrupted meal breaks, and the variety of departmental training on meal breaks.

Next, defendant argues that it has numerous individual defenses with respect to each plaintiff.  It contends that these defenses arise from the variety of differences between each plaintiff.  Finally, defendant argues that class litigation would not be fair because of the numerous individualized defenses that it would need to litigate.

<u>DISCUSSION</u>

For the following reasons, I find that the factors in this case warrant decertification of the conditionally-certified class.

*There is No Common Policy*

Plaintiffs concede that the automatic meal break deduction policy does not itself violate the FLSA.  <u>See, e.g.</u>, <u>Camesi</u>, 2011 WL 6372873 at *4-*5 (collecting cases); <u>Desilva v. North Shore-Long Island Jewish Health System, Inc.</u>, 27 F.Supp.3d 313, 317-320 (E.D.N.Y. 2014); <u>Blaney v. Charlotte-Mecklenburg Hospital Authority</u>, Civil Action No. 10-cv-00592, 2011 WL 4351631 at *6 (W.D.N.C. Sept. 16, 2011); <u>Cason v. Vibra Healthcare</u>, Civil Action No. 10-cv-10642, 2011 WL 1659381 at *3 (E.D.Mich. May 3, 2011).

In cases such as this where defendant's formal policies comply with the FLSA, plaintiffs must demonstrate a "policy-to-violate-the-policy".  <u>See Camesi</u>, 2011 WL 6372863 at *4-*5 (quoting <u>White v. Baptist Memorial Health Care</u>

-22-

Corporation, Civil Action No. 08-cv-02478, 2011 WL 1883959 at *10 (W.D.Tenn. May 17, 2011)); Desilva, 27 F.Supp.3d at 317, 323; Frye v. Baptist Memorial Hospital, Civil Action No. 07-cv-02708, 2010 WL 3862591 at *5 (W.D.Tenn. Sept. 27, 2010).

Plaintiffs contend that, prior to November 2014, there existed a policy-to-violate-the-policy of failing to train employees regarding the entitlement to pay for interrupted meal breaks.  The relevant training was implemented on a department-by-department, and sometimes supervisor-by-supervisor, basis.

Plaintiffs also argue that, primarily after November 2014, there was a policy of discouraging employees from requesting pay for missed or interrupted meal breaks.  Each plaintiff's feeling of discouragement was based on individual interactions with specific supervisors, who claim that they were never instructed to discourage employees from requesting meal break pay.

Plaintiffs' alleged unifying policies rely upon facts and circumstances which differ for each of the opt-in plaintiffs--the training, knowledge, and sentiments of each class member and various supervisors.  As discussed below, these factors generate individualized inquiries and defenses.

### The Circumstances of Plaintiffs' Employment Differed

The circumstances of each plaintiff's employment differed.  See Zavala, 691 F.3d at 536-537; Kuznyetsov,

2011 WL 6372852 at *4-*5; Desilva, 27 F.Supp.3d at 317, 323-324.

The 22 opt-in plaintiffs worked in 14 departments under 32

different supervisors.  See Kuznyetsov, 2011 WL 6372852 at *5;

Desilva, 27 F.Supp.3d at 323.  Each department offered different

services, maintained different hours of operation, and varied in

size and capacity.  The length and start times of their shifts

varied.  Each plaintiff's job duties differed.  Id. at *4; Frye,

2010 WL 3862591 at *4.

Each plaintiff's experience with respect to missed

or interrupted meal breaks also differed.  See Jarosz,

2014 WL 4722614 at *7.  The frequency with which they

experienced missed or interrupted meal breaks differed.  Id.;

Desilva, 27 F.Supp.3d at 324.  The reasons for missed or

interrupted meal breaks were different.  Kuznyetsov,

2011 WL 6372852 at *5; Desilva, 27 F.Supp.3d at 324.  The amount

of work performed during meal breaks varied.  See Babcock v.

Butler County, 806 F.3d 153 (3d Cir. 2015).[73]  The type and

availability of coverage for meal breaks, if any, diverged.  The

number of times each plaintiff requested the cancellation of a

---

[73]     The Third Circuit in Babcock held that meal break work is
compensable under the FLSA if the work performed was for "the predominant
benefit" of the employer.  To counter this holding, plaintiffs cite 29 C.F.R.
§ 785.19(a), which states in relevant part that an "employee must be
completely relieved from duty for the purposes of eating regular meals" and
cannot be "required to perform any duties, whether or active or inactive,
while eating."  However, the Babcock court specifically took this regulation
into account when reaching its holding.  Plaintiff also cites a decision from
the Western District of Pennsylvania, but this case predates Babcock.  See
Prise v. Alderwoods Group, Inc., 817 F.Supp.2d 651, 666 (W.D.Pa. 2011).

meal break deduction ranged widely--from 8 to 252 times.
Jarosz, 2014 WL 4722614 at *7.  Moreover, the methods of
reporting missed or interrupted meal breaks prior to
November 2014 differed by department and sometimes by
supervisor.  Jarosz, 2014 WL 4722614 at *7; Kuznyetsov,
2011 WL 6372852 at *5; Desilva, 27 F.Supp.3d at 324; Frye,
2010 WL 3862591 at *4.

　　　　Plaintiffs provide a litany of similarities between
them, including that they were subject to the same general human
resources policies, used the same timekeeping system, were
subject to an automatic 30-minute lunch break deduction, used
the same payroll system, served in one of two different
positions, and worked full-time or full-time equivalent hours.
However, these similarities are largely immaterial.  As
discussed more fully below, their claims require analysis of the
facts that differ greatly between the plaintiffs.

### *Individualized Inquiries and Defenses*

　　　　Plaintiffs' claims create individualized inquiries and
defenses.  "Individualized defenses prevent efficient
representative proceedings and courts have not hesitated to
grant decertification on that basis."  Kuznyetsov,
2011 WL 6372852 at *3 (quoting Prise v. Alderwoods Group, Inc.,
Civil Action No. 06-01641, 2011 WL 4101145 (W.D.Pa. Sept. 9,
2011)) (internal quotation marks omitted).

-25-

Individual inquiries are necessary to address plaintiff's lack-of-training argument.  The dates on which training was provided regarding meal breaks, the frequency with which such training occurred, and the settings in which training was provided all differed among plaintiffs, supervisors, and departments.  Individual inquiries are required to determine the number of times each plaintiff requested a cancellation of the deduction and whether any of these requests were made for interrupted meal breaks.  Additionally, the court will need to assess each plaintiff's knowledge of the ability and methods to request pay for missed or interrupted meal breaks whether, for example, the knowledge was imparted through training, word of mouth between employees, or by other means.

Plaintiffs argue that no individualized defenses are necessary with respect to its lack-of-training policy argument. They contend that "they were never trained or informed that they could use the Kronos log to claim pay for an interrupted meal break before November 2014, did not claim pay for their interrupted meal breaks during this period, and were not paid for their interrupted meal breaks during this period."[74]  These facts are not undisputed because countervailing evidence exists. The meal-deduction-override request of one plaintiff clearly

---

[74]     Plaintiff's Response at page 22.

indicates that it was made for an interrupted break[75] and numerous supervisors testified that employees did not have to indicate whether or not they experienced a missed versus an interrupted break to request pay because the procedures and effect were the same.

The crux of plaintiffs' claim relates to training, or lack thereof.  Because training regarding meal breaks was decentralized and delegated to each department or supervisor, this claim inherently creates individualized defenses with respect to each opt-in plaintiff.  See Zavala, 691 F.3d at 536-537; see also Camesi, 2011 WL 6372873 at *7.

Regarding plaintiffs' policy-of-discouragement argument, individual inquiries are also necessary.  The court will need to consider factors including what statements or questions were made by supervisors to each plaintiff regarding requests for meal break pay; why each plaintiff felt discouraged from requesting pay; whether each plaintiff's feeling of discouragement was objectively reasonable; whether defendant trained or instructed supervisors to discourage or question requests for meal break pay; how many times, if any, plaintiffs requested meal break pay despite allegedly feeling discouraged; and whether any employee, particularly any plaintiff, was disciplined or otherwise penalized for requesting pay.

---

[75]     Defendant's Exhibit TT.

Each plaintiffs' alleged feeling of discouragement was an individual reaction resulting from interactions with specific supervisors.  Therefore, this inquiry is also individualized. Plaintiffs focus on the uniform Kronos feature of e-mailing supervisors to notify them when employees attested that they experienced a missed or interrupted meal break.  While this practice was systematic, the way each supervisor dealt with the notifications differed, whether he or she simply deleted the e-mails or asked employees about their missed breaks.

Plaintiffs further allege that defendant had knowledge that plaintiffs worked during their meal breaks without being paid.  This allegation also requires an individualized inquiry with respect to each plaintiff.  Each plaintiff testified differently regarding the level of contact with his or her supervisor and the supervisor's knowledge regarding meal breaks. Some plaintiffs testified that they rarely worked with their supervisors, others frequently worked with their supervisor. Some plaintiffs worked in large departments, and others worked in smaller, more intimate, departments.  Moreover, because each plaintiff requested pay for missed or interrupted meal breaks between 8 and 252 times, individual inquiries are necessary to determine how supervisors could determine that each plaintiff worked during meal breaks without pay despite their requests for such pay on many occasions.

-28-

The many factual differences with respect to each plaintiff demonstrate that plaintiffs "were not uniformly affected by [Reading's] department-by-department approach to meal deduction cancellations." See Jarosz, 2014 WL 4722614 at *8. "The decentralized nature of the application of the manner to cancel an automatic deduction and the independent way that each supervisor implemented the same is contrary to the purposes of collective treatment under the FLSA." Kuznyetsov, 2011 WL 6372852 at *7.

When plaintiffs allege that FLSA violations result "from the *enforcement* decisions of individual supervisors . . . collective treatment is not appropriate." Camesi, 2011 WL 6372873 at *8 (quoting Blaney v. Charlotte-Mecklenburg Hospital Authority, Civil Action No. 10-cv-00592, 2011 WL 4351631 at *7-*8 (W.D.N.C. Sept. 16, 2011)) (emphasis in original) (internal quotation marks omitted).

Plaintiffs argue that each plaintiff brings similar claims and requests similar relief. See Zavala, 691 F.3d at 536-537. While plaintiffs' claims are legally similar, they are factually divergent. Moreover, although the type of damages requested is the same, the amount which each plaintiff allegedly suffered must be calculated separately.

Plaintiffs cite Andrako v. United States Steel Corporation, 788 F.Supp.2d 372 (W.D.Pa. March 9, 2011) in

support of their argument that individualized defenses are not required.  Notably, Senior Judge Donetta W. Ambrose, who authored Andrako, stated in Kuznyetsov, a case involving the Kronos meal break auto-deduction, that "Andrako [was] completely distinguishable from [that] case."  Kuznyetsov, 2011 WL 6372852 at *7.  Judge Ambrose explained that in Andrako, it was already determined that the employer's policy of not paying workers for pre- and post-shift walking time was unlawful.  In Kuznyetsov, as here, the court had yet to determine the legality of the common policies alleged by plaintiff--the failure to train and the discouragement of requesting pay.

## *Fairness and Procedural Considerations*

Fairness in this case cuts both ways, but ultimately favors defendant.  Plaintiffs argue that fairness requires final certification because the minimal damages alleged by each plaintiff would deter them from pursuing individual actions. See Martin v. Citizens Financial Group, Inc., Civil Action No. 10-cv-00260, 2013 WL 1234081 at *3 (E.D.Pa. March 27, 2013) (Goldberg, J.); Kuznyetsov, 2011 WL 6372852 at *3; Desilva, 27 F.Supp.3d at 327.  While this is certainly relevant, it is not dispositive because "cost savings 'do[] not override the negative effects that certification is very likely to have on the fairness and manageability of the proceedings.'"  Desilva,

-30-

27 F.Supp.3d at 327 (quoting <u>Camilotes v. Resurrection Health Care Corp.</u>, 286 F.R.D. 339, 353 (N.D.Ill. 2012)).

Fairness considerations weigh in favor of defendant. A collective action would be unmanageable here because of the numerous disparities among the plaintiffs which necessitate individual inquiries and defenses. <u>Kuznyetsov</u>, 2011 WL 6372852 at *3. Accordingly, it would be improper to approach this case with a "broad scale approach." <u>Id.</u> (quoting <u>Moss v. Crawford & Co.</u>, 201 F.R.D. 398, 410 (W.D.Pa. 2000)) (internal quotation marks omitted).

To address the issue of manageability, plaintiffs suggest bifurcating the action between liability and damages. They contend that the primary disparities between the plaintiffs relate to damages. I disagree with this assessment and find that numerous differences among the plaintiffs are relevant to liability. <u>See</u> <u>Kuznyetsov</u>, 2011 WL 6372852 at *7.

### *Other Similar Actions Advise Decertification*

Numerous other district courts have decertified collective actions based on nearly identical facts. Plaintiffs attempt to distinguish this case from other cases challenging the Kronos timekeeping system as it relates to meal breaks. <u>See, e.g.</u>, <u>Jarosz</u>, 2014 WL 4722614 at *8; <u>Camesi</u>, 2011 WL 6372873; <u>Kuznyetsov</u>, 2011 WL 6372852. Plaintiffs contend that the other Kronos cases challenged the automatic

-31-

deduction system itself, whereas plaintiffs here challenge the alleged lack of training and discouragement from requesting pay.

Plaintiffs' argument lacks merit.  Even cases in which plaintiffs challenged the automatic deduction system itself included additional challenges.  The courts have gone beyond the legality of the Kronos automatic deduction feature in their certification analyses.  The legality of this feature has not been the controlling factor in this line of cases.

In Jarosz, a decision issued by this court, plaintiff brought a collective action against his employer, St. Mary Medical Center, based on the Kronos automatic deduction system. In that case, plaintiff argued

> that the decentralized implementation of the
> meal break policies is enough on its own to
> show that the opt-in plaintiffs are similarly
> situated . . . [because] the reliance on
> individual departments to train employees on
> when and how to cancel automatic meal
> deductions gave rise to issues "falling through
> the cracks."

Jarosz, 2014 WL 4722614 at *8.  This is effectively the same claim as plaintiffs here--that individual departments failed to provide training to each employee.  Nonetheless, this court in Jarosz decertified the collective action class based on a finding that plaintiffs were not similarly-situated.  Id. at *8.

Additionally, other district courts in this judicial circuit, recognizing that the Kronos automatic deduction feature

-32-

does not itself violate the FLSA, decertified collective actions which, as here, involved decentralized implementation of meal break policies.  In Camesi, the United States District Court for the Western District of Pennsylvania decertified an FLSA collective action involving the Kronos automatic deduction feature.  Camesi, 2011 WL 6372873.  In doing so, it found that the decentralized implementation of defendant's meal break policies created numerous distinctions between the plaintiffs. Id. at *7.

Similarly, in Kuznyetsov, the Western District of Pennsylvania found that the decentralized implementation of meal break deduction cancellations weighed in favor of decertification.  Kuznyetsov, 2011 WL 6372852 at *7.  As here, the court focused on factors including the variety of job duties, departments, supervisors, reasons for and frequency of missed meal breaks, and the procedures for reporting missed meal breaks.  Id. at *4-*5.

CONCLUSION

For the above reasons, I grant defendant's Motion to Decertify.  Plaintiffs have identified no common policy allegedly violative of the FLSA.  Furthermore, the circumstances of each plaintiff's employment differed, including their experience with meal breaks.

Additionally, plaintiff's claims produce individualized inquiries and individualized defenses.  The experience of each plaintiff with respect to meal break training and sentiments of discouragement from seeking meal break pay was based upon individualized incidents involving interaction with specific supervisors.

Finally, fairness considerations weigh in favor of defendant.  Although plaintiffs would be more easily capable of proceeding jointly for financial and administrative purposes, that approach would be inappropriate given the potential for twenty-two mini trials to the detriment of defendant and the court.  Accordingly, defendant's Motion to Decertify is granted and the twenty-one opt-in plaintiffs are dismissed from this action.